UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT THOUSAND,

                            Plaintiff,

                                                                                9:17-CV-0940
      v.                                                                  (GTS/CFH)

ANTHONY ANNUCCI; et al,

                            Defendants.
_____

APPEARANCES:

ROBERT THOUSAND
11-B-0026
Plaintiff, pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

GLENN T. SUDDABY
Chief United States District Judge

**DECISION and ORDER**

I.    **INTRODUCTION**

Pro se plaintiff Robert Thousand commenced this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") in August 2017. *See* Dkt. No. 1 ("Compl.").[1] Plaintiff did not pay the filing fee for this action and sought leave to proceed in forma pauperis.

Upon review in accordance with 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A, the Court determined that plaintiff's complaint, as presented to this Court, failed to allege facts to support a case or controversy which he has standing to pursue, as is required by Article III of

---

[1] Plaintiff has filed two other civil rights actions in this District. *See Thousand v. Corrigan*, No. 9:15-CV-1025 (MAD/ATB) (Judgment in favor of defendants entered Oct. 13, 2017); *Thousand v. King*, No. 9:17-CV-1003 (BKS/TWD) (pending).

the United States Constitution and was, therefore, subject to dismissal for failure to state a claim upon which relief could be granted.  Dkt. No. 7 (the "November Order") at 6-8.[2]  In light of his pro se status, plaintiff was afforded the opportunity to file an amended complaint.  *Id.* at 8-10.[3]

Plaintiff duly filed an amended complaint which is before this Court for review.  Dkt. No. 9 ("Am. Compl.").

**II.    DISCUSSION**

In his amended complaint, plaintiff restates the facts regarding the disciplinary policies and procedures promulgated by the New York Department of Corrections and Community Supervision ("DOCCS") and his claims that the practice followed by DOCCS and the New York courts of classifying certain "witness violations" as regulatory, and remitting those matters for a new hearing violates inmates' rights protected under the Due Process Clause of the Fourteenth Amendment.  *See* Am. Compl. at 4-15.[4]  While acknowledging that DOCCS regulations afford inmates additional protections not mandated by the Constitution, plaintiff nevertheless contends that "all witness violations during prison disciplinary proceedings are,

---

[2]  More specifically, the Court concluded that plaintiff had not demonstrated that he has suffered an "injury in fact" which will be likely redressable by a favorable decision in this action because plaintiff did not provide facts regarding (i) the date(s) on which he was subjected to disciplinary charges, (ii) denied the testimony of requested witnesses (either by the hearing officer or because the inmate refused to testify and the circumstances of that refusal were not properly investigated), (iii) found guilty, and (iv) received an administrative determination of a claimed "witness violation" reversing the hearing disposition and remitting the matter for a new hearing (rather than expunging the record).  November Order at 6-8.  The Court noted, moreover, that plaintiff would have to demonstrate that he enjoyed a protected Fourteenth Amendment liberty interest in any such disciplinary proceeding in accordance with *Sandin v. Conner*, 515 U.S. 472 (1995), in order to state a cognizable Fourteenth Amendment claim for the violation of his due process rights.  *Id.* at 8.

[3]  Plaintiff was granted leave to proceed in forma pauperis and without prepayment of the filing fee.  November Order at 9.

[4]  The DOCCS regulations are set forth in DOCCS Directive 4932.  Plaintiff refers to DOCCS Directive 4932 in his pleadings as "Chapter V."

in fact, of a 'Constitutional' dimension; not a regulatory one." *Id.* at 9.  Plaintiff maintains that the exclusive remedy for "witness violations" is expungement.  *Id.* at 15 & n.1 ("The issue in the complaint is solely the unconstitutionality of remitting [ ] these hearings for a second hearing when the initial reversal was due to a witness violation; that all witness issues are of a "Constitutional" dimension and not of a ''Regulatory" one.").[5]

Under the heading "Plaintiff's Injury-in-Fact," plaintiff has provided facts in his amended complaint intended to demonstrate his standing to pursue this action.  Am. Compl. at 13-15.  Plaintiff states that in February 2014, he was unable to obtain the testimony of a requested witness who refused to testify at a Tier III hearing (the "February 2014 Hearing") convened to consider misbehavior charges against plaintiff.  *Id.*  Plaintiff further states that he was found guilty of misbehavior and sanctioned with a period of confinement in the Special Housing Unit ("SHU").  *Id.* at 13.  On April 14, 2014, the disciplinary determination was administratively reversed due to the hearing officer's failure to properly investigate the witness's refusal to testify; the matter was remitted for a new hearing.  *Id.*[6]  Based upon the foregoing, plaintiff seeks a declaratory judgment and injunctive relief against defendants

---

[5] In *Texeira v. Fischer*, 22 N.Y.S.3d 148 (2015), the New York Court of Appeals declined to rule that expungement of the disciplinary disposition from the inmate's prison records was the exclusive remedy for the violation of an inmate's right to obtain witness testimony at a disciplinary hearing.  The Court of Appeals reasoned that because "[u]nder *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)], refusal to provide a witness is not an automatic due process violation," and because DOCCS regulations provide additional protections to inmates not mandated by *Wolff*, it is "possible to satisfy *Wolff* and yet not comply with the regulations."  *Id.*  As a result, where the record demonstrated that the DOCCS regulation had not been complied with, but it was not possible to determine whether the inmate's constitutional rights had been violated, the Court affirmed the lower court's remittal of the matter for a new hearing.  *Id.* at 151.  Here, because the Court concludes for the reasons set forth below that plaintiff has not demonstrated that he enjoyed a protected liberty interest in the February 2014 Hearing, the merits of plaintiff's due process claim need not and will not be addressed.

[6] Plaintiff was found guilty at the second hearing and was again subjected to "due process violations." Am. Compl. at 14.  However, plaintiff specifically disavows any intention to assert claims "arising out of the second hearing."  *Id.* at 14-15.

3

DOCCS Acting Commissioner Annucci, DOCCS Director of Special Housing/Inmate Discipline Rodriguez, and New York Governor Cuomo in their official capacities prohibiting the remittal of disciplinary proceedings for a new hearing where a "witness violation" has been established. *Id.* at 17.

Upon review, the Court finds that plaintiff has alleged facts which support, at this preliminary stage of the proceedings, a case or controversy involving his constitutional due process rights which he has standing to pursue. Thus, the Court must next determine whether plaintiff has alleged facts sufficient to plausibly suggest that he enjoyed a protected Fourteenth Amendment liberty interest in the February 2014 Hearing. "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).[7] Thus, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d

---

[7] For example, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate. *Sandin*, 515 U.S. at 485-86. In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence. *Id.*

at 654; *Colon*, 215 F.3d at 231.[8]

Here, because plaintiff has not disclosed the duration of his SHU confinement,[9] nor has he alleged facts which even suggest that the conditions under which he was confined were unduly harsh or otherwise atypical for purposes of *Sandin*, the amended complaint affords no basis upon which the Court could find that he has a protected liberty interest in the February 2014 Hearing for purposes of the Fourteenth Amendment.[10]

For the reasons set forth above, and in the November Order, this action is dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### III.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 9) fails to state a claim for the violation of plaintiff's constitutional rights upon which this Court may grant relief and this

---

[8] "Under the 'normal conditions of SHU confinement in New York [state prison],' the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited." *Palmer v. Richards*, 364 F.3d 60, 66 n.3 (2d Cir. 2004) (citation omitted).

[9] In light of plaintiff's statement that the February 2014 Hearing was reversed on April 14, 2014, it appears that the duration of his SHU confinement was significantly less than 101 days.

[10] The Court notes, moreover, that any due process claims arising out of the February 2014 Hearing appear to be time-barred. The "applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). A Section 1983 cause of action accrues "when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Covington v. City of New York*, 916 F. Supp. 282, 285 (S.D.N.Y. 1996) (citing *Woods v. Candela*, 13 F.3d 574, 575 (2d Cir. 1994)). "Thus, in determining when the statute begins to run, the '"proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful."' *Covington*, 916 F. Supp. at 285 (citations omitted). It appears that plaintiff's claims arose, at the latest on April 14, 2014. Plaintiff's complaint was signed on August 22, 2017 and received for filing by the Clerk of this Court on August 25, 2017.

action is therefore **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk shall enter judgment accordingly; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated:     February 13, 2018
           Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge